# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### FORT MYERS DIVISION

NANCY CARROLL,

                Plaintiff,

v.

                Case No. 2:22-cv-325-JRK

KILOLO KIJAKAZI,
Acting Commissioner of Social
Security,

                Defendant.

_____

## OPINION AND ORDER[1]

## I.   Status

Nancy Carroll ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is the result of VATER syndrome,[2] gastrointestinal blockages, colon resection, fecal incontinence, anorectal malformation, an imperforate anus, anxiety, and

---

[1]     The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 10), filed August 4, 2022; Reference Order (Doc. No. 13), signed August 12, 2022 and entered August 15, 2022.

[2]     "VATER syndrome . . . is a group of growth abnormalities (birth defects) that happen in the early stages of embryo development during pregnancy." Cleveland Clinic, VATER Syndrome (VACTERL Association), available at https://my.clevelandclinic.org/health/diseases/24083-vater-syndrome (last visited September 7, 2023).

depression. Transcript of Administrative Proceedings (Doc. No. 12; "Tr." or "administrative transcript"), filed August 4, 2022, at 60, 75, 220. Plaintiff protectively filed an application for DIB on January 31, 2020, alleging a disability onset date of February 3, 2019.[3] Tr. at 204-05. The application was denied initially, Tr. at 60-72, 73, 104, 105-07, and upon reconsideration, Tr. at 74-102, 103, 114, 116, 117-29.[4]

On July 28, 2021, an Administrative Law Judge ("ALJ") held a hearing,[5] during which he heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). See Tr. at 33-59. At the time of the hearing, Plaintiff was thirty-eight (38) years old. Tr. at 48. On August 25, 2021, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. See Tr. at 15-26.

Thereafter, Plaintiff sought review of the Decision by the Appeals Council and submitted a brief authored by her counsel. See Tr. at 4-5 (Appeals Council exhibit list and order), 198-200 (request for review), 338-44 (brief). On March 22, 2022, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3,

---

[3]     Although actually completed on February 3, 2020, see Tr. at 204, the protective filing date for the DIB application is listed elsewhere in the administrative transcript as January 31, 2020, see, e.g., Tr. at 60, 75.

[4]     Some of these cited records are duplicated in the administrative transcript.

[5]     The hearing was held via telephone with Plaintiff's consent because of extraordinary circumstances caused by the early stages of the COVID-19 pandemic. Tr. at 36, 138-51, 316, 332-33.

thereby making the ALJ's Decision the final decision of the Commissioner. On May 20, 2022, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff raises as the issue whether the ALJ erred in evaluating the opinion of Milena Loukanova, M.D. as unpersuasive. Memorandum in Opposition to the Commissioner's Decision (Doc. No. 15; "Pl.'s Mem."), filed August 29, 2022, at 2. On October 26, 2022, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 17; "Def.'s Mem.") addressing the issue. Then, as permitted, Plaintiff on November 10, 2022 filed Plaintiff's Reply Memorandum (Doc. No. 18; "Reply"). After a thorough review of the entire record and consideration of the parties' respective arguments, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for further proceedings.

## II.   The ALJ's Decision

When determining whether an individual is disabled,[6] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal

---

[6]      "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 404.1520; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry. See Tr. at 17-26. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since February 3, 2019, the alleged onset date." Tr. at 17 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: VATER syndrome; colon issues with ileostomy; obesity; anxiety; depression; migraines; and lumbar spine levoscoliosis, congenital block vertebra involving L4 and L5, and L5-S1 facet joint sclerosis." Tr. at 17 (emphasis and citation omitted). At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 18 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform sedentary work as defined in 20 CFR [§] 404.1567(a), except only low stress work defined as no high production demands; only simple, routine, repetitive tasks with simple instructions; and only occasional interaction with others at the worksite.

Tr. at 20 (emphasis omitted).

At step four, the ALJ found that Plaintiff "is unable to perform any past relevant work" as a "financial customer service representative" and a "teller." Tr. at 25 (some emphasis, capitalization, and citation omitted). At the fifth and final step of the sequential inquiry, after considering Plaintiff's age ("35 years old . . . on the alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ relied on the VE's testimony and found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 25 (emphasis and citations omitted), such as "medical supplies assembler," "electronics bonder," and "stone setter," Tr. at 26 (emphasis and some capitalization omitted). The ALJ concluded Plaintiff "has not been under a disability . . . from February 3, 2019, through the date of th[e D]ecision." Tr. at 26 (emphasis and citation omitted).

## III.   Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g). Although no deference is given to the ALJ's

conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.   Discussion

Plaintiff argues the ALJ erred in evaluating the opinion of Dr. Loukanova, her treating physician. Pl.'s Mem. at 2-9. According to Plaintiff, the

ALJ's finding that the opinion is inconsistent with objective medical evidence is not supported by substantial evidence. Id. at 4-7; see Reply at 2-5. Next, Plaintiff asserts the ALJ improperly relied on her alleged ability to perform daily activities because "the ALJ's description of those activities lacks important context." Pl.'s Mem. at 7; see Reply at 5-6. Responding, Defendant contends the ALJ correctly analyzed Dr. Loukanova's opinion, and the ALJ's reasons for finding it unpersuasive are supported by substantial evidence. Def.'s Mem. at 5-14.

The SSA revised the rules regarding the evaluation of medical evidence for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844 (January 18, 2017); see also 82 Fed. Reg. 15,132 (March 27, 2017) (amending and correcting the final Rules published at 82 Fed. Reg. 5,844). Under the new rules and Regulations, "A medical opinion is a statement from a medical source about what [the claimant] can still do despite [his or her] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions in the following abilities:" 1) the "ability to perform physical demands of work activities"; 2) the "ability to perform mental demands of work activities"; 3) the "ability to perform other demands of work, such as seeing, hearing, or using other senses"; and 4) the "ability to adapt to environmental conditions." 20 C.F.R. § 404.1513(a)(2); see also 20 C.F.R. § 404.1502 (defining "[a]cceptable

medical sources"). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical condition, including judgments about the nature and severity of [a claimant's] impairments, [a claimant's] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(a)(3).

An ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). [7] "Because section 404.1520c falls within the scope of the Commissioner's authority and was not arbitrary and capricious, it abrogates [the United States Court of Appeals for the Eleventh Circuit's] prior precedents applying the treating-physician rule." Harner v. Soc. Sec. Admin., Comm'r, 38 F.4th 892, 896 (11th Cir. 2022).

The following factors are relevant in an ALJ's consideration of a medical opinion or a prior administrative medical finding: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R.

---

[7]   Plaintiff filed her DIB application after the effective date of section 404.1520c, so the undersigned applies the revised rules and Regulations.

§ 404.1520c(c). Supportability and consistency are the most important factors, and the ALJ must explain how these factors were considered. 20 C.F.R. § 404.1520c(b)(2). Generally, the ALJ is not required to explain how he or she evaluated the remaining factors. 20 C.F.R. § 404.1520c(b)(2). However, if the ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . ." 20 C.F.R. § 404.1520c(b)(3).[8]

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1545(a)(5). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Pupo v. Comm'r, Soc. Sec. Admin., 17 F.4th 1054, 1064 (11th Cir. 2021) (citing Schink,

---

[8]        When a medical source provides multiple opinions, the ALJ is also not required to articulate how he or she evaluated each medical opinion individually. 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1). Instead, the ALJ must "articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis using the factors listed [above], as appropriate." 20 C.F.R. § 404.1520c(b)(1).

935 F.3d at 1268); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

Here, Dr. Loukanova has been Plaintiff's primary doctor since 2004 (although there was a multi-year break in treatment, from an unknown date until January 2019, due to an insurance issue). See Tr. at 56-57, 757. On July July 31, 2020, Dr. Loukanova filled out a Supplemental Mental Impairment Questionnaire in which she opined Plaintiff's anxiety as a result of her conditions would make her unable to function in a work environment due to job stresses. Tr. at 634-35. On October 1, 2020, Dr. Loukanova provided an opinion on Plaintiff's physical functioning in which she opined Plaintiff can sit, stand, or walk fifteen minutes at a time, she can infrequently lift or carry up to five pounds but never more than that, she requires bed rest six out of eight hours per day, she has stamina problems requiring rest for forty minutes each hour, her conditions will interfere with her reliably attending work, the pain is severe, the pain will affect Plaintiff's concentration and memory daily, she should infrequently use her hands for any activities, and she will be chronically absent from work (defined as more than four per month). Tr. at 757-59.

The ALJ wrote the following regarding Dr. Loukanova's opinions:

The undersigned does not find these opinions persuasive, as the degree of limitations assessed is not supported by the objective medical evidence, [Plaintiff's] own reports, or [Plaintiff]'s activities of daily living. [Plaintiff] has a history of VACTRYL and imperforate anus. She has undergone surgical interventions including ACE conduit with ileostomy. [Plaintiff] has had leakage from her stoma site and has ongoing complaints of abdominal pain. The physical examinations have also shown pain and tenderness. However, she had a normal gait and stance. She had no neurological deficits. She was alert and oriented. The record is devoid of any longitudinal history of mental health treatment or abnormal mental status examinations. The psychiatric findings within the evidence reveal claimant was active, alert, and oriented. She exhibited a normal affect. Her responses were appropriate. [Plaintiff] exhibited good judgment. [Plaintiff] indicated she cares for her child; she tends to her personal care needs; she prepares meals; she performs household chores; she drives and goes out alone; she manages her finances; she shops online; she listens to the radio and goes online. [Plaintiff] has also reported she can handle stress; she handles changes in routine well; she gets along with others; and she can pay attention unless she requires rest from stomach pain. The totality of the objective medical evidence detailed throughout this decision fails to support the opinions rendered.

Tr. at 23-24 (citation omitted).

The ALJ's reasons for finding Dr. Loukanova's opinions to be unpersuasive are not supported by substantial evidence. The ALJ listed that the opinions are "not supported by the objective medical evidence, [Plaintiff]'s own reports, or [Plaintiff]'s activities of daily living." Tr. at 23. Yet, all of this listed evidence supports Plaintiff's assertions about the pain of her conditions

and its effect on her ability to work: the heart of the matters about which Dr. Loukanova opined.

The ALJ stated first that Dr. Loukanova's opinions are not supported by the objective medical evidence, citing as examples Plaintiff's "normal gait and stance," lack of "neurological deficits," and that Plaintiff "was alert and oriented" during examinations. Tr. at 24. But these facts—even if accurate[9]— do not undermine the effects of Plaintiff's physical conditions that are mainly gastrointestinal and core related.

The ALJ next relied on Plaintiff's "own reports" and "activities of daily living" as evidence that Dr. Loukanova's opinions are not supported. Tr. at 24. In support, the ALJ cited that Plaintiff "indicated she cares for her child; she tends to her personal care needs; she prepares meals; she performs household chores; she drives and goes out alone; she manages her finances; she shops online; she listens to the radio and goes online. [Plaintiff] has also reported she can handle stress; she handles changes in routine well; she gets along with others; and she can pay attention unless she requires rest from stomach pain." Tr. at 24. But, this exaggerates the majority of Plaintiff's reports.

_____

[9]    There is evidence in the record contradicting the ALJ's observation about Plaintiff's gait. The consultative examiner, Michael Rosenberg, M.D., noted on February 1, 2021 that Plaintiff had a "[v]ery slow deliberate gait" and she "ke[pt] her hand on her stomach when she walk[ed]." Tr. at 1042.

Plaintiff actually stated she has help from her husband and stepmom caring for her child (and the child is only with her fifty percent of the time). Tr. at 266. She "sometimes" prepares meals with help from her husband a couple of times per week, or she can make a sandwich. Tr. at 267. As for household chores, Plaintiff stated she can "wash a couple dishes" or "fold a small amount of laundry" for about fifteen minutes, but sometimes she cannot even do that because she is "in [the] bathroom or laying down to try to reduce stomach pains / diarrhea." Tr. at 267. The recurring theme in Plaintiff's self-report forms was that stomach pain often prevents her from doing much, and when the pain occurs, she needs to lie down. See Tr. at 265-72.

Moreover, Plaintiff's reports of struggles with activities and with stomach pain and efforts to relieve it were consistent among her medical providers and the other evidence in the file. See, e.g., Tr. at 1041-44 (Dr. Rosenberg's report summarizing Plaintiff's pain issues, her "need[ing] help at home," her cooking and cleaning counters twice per week, and her inability to do laundry because of stomach pain), Tr. at 1113-22 (notes of provider Monica H. Fazzini, PA-C, documenting pain that "is improved with pressure," pain that is only helped by "laying on her stomach or side," and is made worse by "[m]ovement and eating").

Finally, Plaintiff testified she left her job because of her "extreme stomach pains" and having to call out sick often, even when she was attempting to work part time. Tr. at 39-40. According to Plaintiff's testimony, her husband does the

majority of the household chores, or her stepmother will help. Tr. at 43. She has "maybe about three or four . . . good days a month" in which she can "wash a couple dishes in the sink or sit on the couch and watch TV for 20 minutes instead of having to lay down." Tr. at 43.

All of this evidence supports Dr. Loukanova's opinions about the pain and its effects on Plaintiff's ability to both perform work-related functions and to consistently attend work. The matter must be reversed and remanded for reconsideration of Dr. Loukanova's opinions.

## V.   Conclusion

In light of the foregoing, it is

**ORDERED**:

1.      The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

(A)      Reconsider Dr. Loukanova's opinions about the effects of Plaintiff's conditions on her ability to work; and

(B)      Take such other action as may be necessary to resolve this claim properly.

2.      The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on September 15, 2023.

JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of Record